UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK R. MARASCHIELLO,

                            Plaintiff,

         v.

CITY OF BUFFALO POLICE DEPARTMENT, and
H. McCARTHY GIPSON,

                       Defendants.

_____

**REPORT**
**and**
**RECOMMENDATION**

**10-CV-00187A(F)**

APPEARANCES:        LAW OFFICE OF LINDY KORN
                          Attorneys for Plaintiff
                          LINDY KORN,
                          CHARLES L.  MILLER, II, and
                          RICHARD JOSEPH PERRY, JR., of Counsel
                          Electric Tower
                          535 Washington Street, 9th Floor
                          Buffalo, New York 14203


                          HODGSON RUSS LLP
                          Attorneys for Defendant City of Buffalo Police Department
                          ADAM W. PERRY, and
                          JOSHUA ISAAC FEINSTEIN, of Counsel
                          The Guarantee Building, Suite 100
                          140 Pearl Street
                          Buffalo, New York 14202-4040


                          DAVID RODRIGUEZ
                          Acting Corporation Counsel
                          CITY OF BUFFALO, DEPARTMENT OF LAW
                          Attorneys for Defendants
                          ROBERT EMMET QUINN, Assistant Corporation Counsel,
                           of Counsel
                          65 Niagara Street
                          Buffalo, New York 14202

CONNORS & VILARDO, LLP
Attorneys for Defendant H. McCarthy Gipson
TERRENCE M.  CONNORS, and
JAMES W. GRABLE, JR., of Counsel
1000 Liberty Building
424 Main Street
Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on

August 19, 2010, for all pretrial matters.  The matter is presently before the court on

Plaintiff's motion for partial summary judgment filed on January 6, 2011 (Doc. No. 22),

and Defendant Gipson's cross-motion for partial summary judgment filed on February

18, 2011 (Doc.  No.  32).

## BACKGROUND

Plaintiff, Mark R. Maraschiello ("Plaintiff"), a Caucasian male employed as a

Captain with Defendant City of Buffalo Police Department ("the City"), commenced this

action on March 5, 2010, alleging reverse discrimination based on the City's failure to

promote Plaintiff to a vacant inspector position.  H. McCarthy Gipson ("Gipson") was, at

all times relevant to this action, City of Buffalo Police Chief and is also sued as a

Defendant.  Plaintiff asserts four claims for relief, including (1) racial discrimination in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("First

Claim"); (2) racial discrimination in violation of 42 U.S.C. § 1983 ("Second Claim"); (3)

racial discrimination in violation of the Fourteenth Amendment ("Third Claim"); and (4) a

New York common law defamation claim based on allegations Defendants referred to

Plaintiff as racist ("Fourth Claim").  Defendants' answer was filed on September 2, 2010.

On November 22, 2010, Plaintiff served a Request for Admission ("Request to Admit") on the City's Assistant Corporation Counsel Robert E. Quinn ("Quinn"). Attached to the Request to Admit were two documents relevant to this case, which Plaintiff requested Quinn admit as genuine.

On January 6, 2011, Plaintiff moved for partial summary judgment (Doc. No. 22) ("Plaintiff's motion").  Plaintiff's motion is supported by the attached Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (Doc.  No.  22-1) ("Plaintiff's Memorandum"), Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts (Doc. No. 22-2) ("Plaintiff's Statement of Facts"), the Declaration of Lindy Korn, Esq. (Doc. No. 22-3) ("Korn Declaration"), and exhibits A through E ("Plaintiff's Exh(s). __").

In opposition to Plaintiff's motion, the City filed on February 18, 2011, The City's Memorandum of Law Opposing the Plaintiff's Motion for Partial Summary Judgment (Doc. No. 26) ("City's Memorandum"), the Declaration of Olivia Licata (Doc. No. 27) ("Licata Declaration"), with attached exhibit A ("Licata Declaration Exh. A"), the Declaration of Nancy Abrams Gaess, Ph.D. (Doc. No. 28) ("Gaess Declaration"), with attached exhibits A and B ("Gaess Declaration Exh(s). __"), the Declaration of Joshua Feinstein, Esq.  (Doc. No. 29) ("Feinstein Declaration"), with attached exhibit A ("Feinstein Declaration Exh. A"), and The City's Local Rule 56.1 Counter Statement of Facts (Doc. No. 30) ("City's Counterstatement of Facts").

On February 18, 2011, Defendant Gipson, in responding in opposition to

Plaintiff's motion, filed a cross-motion for partial summary judgment (Doc. No. 32) ("Gipson's motion"), seeking dismissal of the First Claim alleging a Title VII violation against Gipson on the basis that individuals are not subject to liability under Title VII. Gipson's motion is supported by the attached Affidavit of James W. Grable, Esq. ("Grable Affidavit"), and exhibits A through C ("Grable Affidavit Exh(s). __"), and the separately filed Memorandum of Law in Support of Defendant Gipson's Cross-Motion for Partial Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. No. 33) ("Gipson's Memorandum"), and Statement of Facts Pursuant to Local Rule 56 (Doc. No. 34) ("Gipson's Statement of Facts").

On February 25, 2011, Plaintiff filed the Memorandum of Law in Reply to Defendant's Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment (Doc. No. 38) ("Plaintiff's Reply").  On March 9, 2011, Plaintiff filed a Reply to Defendant Gipson's Cross Motion for Partial Summary Judgment (Doc. No. 42) ("Plaintiff's Response"), acknowledging that individuals are not subject to liability under Title VII and advising that Plaintiff does not oppose Gipson's motion seeking partial summary judgment with regard to Plaintiff's Title VII claim.  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion should be DENIED; Gipson's motion should be GRANTED; summary judgment should be GRANTED in favor of Defendants *sua sponte*.

**FACTS**[1]

Plaintiff, Mark R.  Maraschiello ("Plaintiff" or "Maraschiello"), is a Captain with Defendant City of Buffalo Police Department ("Police Department").  At all times relevant to this action, Defendant H.  McCarthy Gipson ("Gipson"), was Chief of the Buffalo Police Department.  The highest ranking position with the Police Department for which a civil service examination is required for promotion is that of police "inspector" ("inspector").  On September 16, 2006, Plaintiff took the civil service exam which, if passed, would render Plaintiff eligible for promotion to an inspector position should such a vacancy occur.  Plaintiff passed the exam, receiving the highest grade, and was ranked first on the list of those candidates eligible for promotion to inspector, certified in accordance with state civil service law on December 13, 2006 ("the 2006 Eligible List").

In 2007, the City of Buffalo ("the City"), based on litigation in connection with two civil rights lawsuits filed in 1998 and 2002 challenging the city's fire lieutenant examinations prepared by the New York State Department of Civil Service ("NYS Civil Service"), and seeking to avoid future litigation regarding the potential disparate impact of such examinations, decided to discontinue using the written civil service promotional examination process developed by NYS Civil Service for selecting its police and fire department employees to be promoted to various promotional positions and ranks.  In furtherance of this goal, the City, on April 27, 2007, issued a request for proposals ("RFP")[2] for the development of police promotional examinations.  The RFP advised

---

[1] Taken from the pleadings and motion papers filed in this action.

[2] A copy of the City's RFP for Development of Police Promotional Examinations is filed as Plaintiff's Exh. C.

that all bidders' tendered proposals were to be accompanied by

> **a statement indicating that they will work toward a minority workforce goal of 25%, and woman workforce goal of 5%. . . .**

RFP ¶ 1(C) (bold text in original).

From among the bidders who responded to the RFP, the City selected Industrial/Organization Solutions, Inc. ("I/O Solutions"), a public safety human resources consulting firm specializing in personnel selection procedures and testing to assist in developing and administering a promotional examination process for the Buffalo Police ranks of detective sergeant, detective, lieutenant, captain, and inspector.  In late 2007 and early 2008, the City and I/O Solutions collaborated in developing a promotional examination consisting of a written examination and a structured oral interview or assessment center test.  I/O Solutions supervised the development, validation, assessor recruitment, assessor training, assessment administration and rating, and the tabulation of results for the police promotional process.

On January 4, 2008, the City issued civil service examination announcements for various positions, including police inspector.  For the police inspector civil service examination, a written component comprising 25 % of the examination was administered and scored by I/O Solutions in February 2008, to be followed at a later date by an assessment center test comprising 75 % of the examination.

Meanwhile, Special Order No. 2008-48 ("Special Order No.  2008-48"), issued by Gipson on March 18, 2008, announced the retirement of one Philip Ramunno ("Ramunno"), a lieutenant with the Police Department.  On March 31, 2008, the assessment center portion of the civil service examination was administered.  On April

16, 2008, after the 2008 examinations were graded and scored, the City's Civil Service

Division adopted a new eligible list for all titles, including inspector with the Police

Department ("2008 Eligible List").  Upon the adoption of the 2008 Eligible List, the 2006

Eligible List automatically expired and no appointments to any civil service position

within the City's Police Department could be made from it.

It is undisputed that Plaintiff applied to take the 2008 civil service examination,

but for reasons that remain unexplained, did not sit for the examination.  It is also

undisputed that all candidates on both the 2006 Eligible List and the 2008 Eligible List

were Caucasian males.  On June 16, 2008, Patrick Reichmuth ("Reichmuth"), a white

male who was ranked second on the 2006 Eligible List, and first on the 2008 Eligible

List, was appointed to the vacant police inspector position.

On September 29, 2008, Plaintiff filed a verified complaint ("administrative

complaint") with the New York State Division of Human Rights ("DHR"), asserting the

City unlawfully discriminated against Plaintiff with regard to his employment based on

Plaintiff's race.  On May 14, 2009, the DHR issued its Determination and Order After

Investigation ("DHR D&O")[3] regarding the administrative complaint, finding the record

did not support Plaintiff's allegations that the City revised its civil service examination to

deny Plaintiff a promotion to an inspector position because of Plaintiff's race.  DHR

D&O at 1.  Accordingly, Plaintiff's administrative complaint was dismissed.[4]  *Id*. at 2.

---

[3] Grable Affidavit Exh. C.

[4] The record does not establish whether Plaintiff timely filed an appeal of the DHR D&O in New
York Supreme Court, Erie County, or requested review by the EEOC.  For purposes of the instant motion,
however, Defendants have not raised failure to exhaust administrative remedies or the statute of
limitations as a defense, despite asserting both affirmative defenses in the answer.  Answer, Third
Defense (failure to comply with applicable statute of limitations), and Fifth Defense (failure to exhaust

## DISCUSSION

**1.     Default Judgment**

The court first addresses Plaintiff's alternative request for an order granting a default judgment against Gipson for failing to answer the Complaint.  Plaintiff's motion ¶ 5.  Gipson argues in opposition that Gipson filed an answer to the Complaint on and there thus is no basis for default.  Gipson's Memorandum at 2.  In further support of Plaintiff's motion, Plaintiff asserts that although Gipson has retained his own legal counsel, separate from the City, Gipson has not filed a separate answer to the Complaint.  Plaintiff's Reply at 10.

According to the docket for this case, on September 2, 2010, the City and Gipson, both of whom were then represented by the City's Acting Corporation Counsel David Rodriguez and Assistant Corporation Counsel Robert E. Quinn, filed through use of this court's Case Management/Electronic Court Filing system ("CM/ECF"), an answer to the Complaint (Doc. No. 12) ("Answer").  Gipson did not retain separate counsel until October 25, 2010 (Docs. Nos. 16 and 17) (notices of appearance filed, respectively, by Terrence M. Connors, Esq. and James W. Grable, Jr., Esq., on Gipson's behalf).  Plaintiff does not challenge the accuracy of this court's CM/ECF system.  Plaintiff references no law requiring Gipson, upon obtaining legal counsel separate from the City, to file an additional, separate answer to the Complaint because of the retention of independent counsel, and the court's research has revealed none.  Accordingly, Plaintiff's alternative motion seeking a default against Gipson for failing to answer

---

administrative remedies).

8

should be DENIED.


2.      **Summary Judgment**

Summary judgment on a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (citing cases).  Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996).

In the instant case, Plaintiff maintains Defendants were required to appoint Plaintiff to the inspector position that became vacant on Mach 18, 2008, upon the retirement of Ramunno, when the 2006 Eligible List was in effect.  Plaintiff's Memorandum at 3.  According to Plaintiff, Defendants' own papers establish the civil service examination was revised, out of fear of litigation, to achieve a specific racial and gender goal in the City's promotional decisions relating to the Police Department, in violation of Title VII.  *Id*.

Preliminarily, Plaintiff asserts that Defendant City, by failing to respond to the Request to Admit served on Assistant Corporation Counsel Quinn on November 22, 2010, has admitted the genuineness of the RFP and Special Order 2008-48.  Plaintiff's Memorandum at 5.  The City does not dispute this assertion.  A party's failure to timely respond to a request to admit deems the matter admitted.  *See McBride v. BIC Consumer Products Manufacturing Company, Inc.*, 583 F.3d 92, 96 (2d Cir.  2009) (citing Fed.R.Civ.P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.")).  Accordingly, the genuineness of the copies of the RFP and Special Order 2008-48 attached to the Request to Admit is deemed admitted.

A.      **First Claim - Title VII**[5]

Title VII prohibits employment discrimination based on, *inter alia*, race.  42

U.S.C. § 2000e-2(a).  Plaintiff claims that he was subjected to racially disparate

treatment by the City's decision to promote someone from the 2008 Eligible List rather

than from the 2006 Eligible List was a violation of Title VII because the 2008 Eligible

List was created for racial reasons.  Plaintiff's Memorandum at 2.  The parties rely on

different arguments in support of their opposing summary judgment motions.

According to Plaintiff, the City's decision is contrary to the Supreme Court's

recent decision in *Ricci v. DeStefano*, __ U.S. __, 129 S.Ct. 2658 (2009) ("*Ricci*"), which

held firefighters whose civil service test results were discarded over fears of litigation

based on race discrimination were entitled to summary judgment on their claim that

such action violated their rights under Title VII.  Plaintiff's Memorandum at 6-7.  In

opposition to Plaintiff's motion, the City asserts that Plaintiff is unable to establish a

*prima facie* case of employment discrimination under Title VII, in accordance with the

burden-shifting standard first articulated in *McDonnell Douglas v. Green*, 411 U.S. 792

(1972) ("*McDonnell Douglas*"), City's Memorandum at 3-5; that Plaintiff has

misconstrued *Ricci*, which is inapplicable to this case, *id.* at 5-9; and, alternatively, even

if *Ricci* is applicable, the City's actions are not discriminatory because they were

properly taken to avoid future litigation, *id.* at 9-15.  In further support of his motion and

in opposition to the City's motion, Plaintiff asserts that the *McDonnell Douglas* burden

---

[5]  Plaintiff concedes his Title VII claim is asserted only against the City, and not Gipson, and does not oppose Gipson's motion seeking partial summary judgment on the Title VII claim.  Plaintiff's Response at 1.

shifting standard for establishing a *prima facie* case of employment discrimination on which the City relies is inapplicable where, as here, there is direct evidence of the alleged discrimination, Plaintiff's Reply at 3-5; and that the City has misconstrued *Ricci* and, thus, failed to perceive that *Ricci* supports granting Plaintiff's motion, *id.* at 6-10.

Careful review of the record establishes that the instant case is factually distinct from *Ricci*, such that *Ricci* does not support summary judgment in favor of Plaintiff. Further, the direct evidence on which Plaintiff relies does not support Plaintiff's argument that his Title VII claim is outside the realm of the *McDonnell Douglas burden-shifting* analysis. Moreover, the evidence in the record fails to establish a *prima facie* case of race-based employment discrimination under the *McDonnell Douglas* burden-shifting analysis. Accordingly, as discussed below, summary judgment on Plaintiff's Title VII claim should be GRANTED in favor of the City and DENIED as to Plaintiff.

Because the Plaintiff's principal argument in support of summary judgment turns on *Ricci* being applicable to the instant case, the court discusses *Ricci* in detail. In *Ricci*, a group of white and Hispanic firefighters sued the city and certain city officials under Title VII when the defendants refused to certify the results of a civil service examination that were to have been used to create a promotion eligibility list because the promotion eligibility list that would have been created from the examination results would not have included any minority firefighters and would likely have subjected the defendants to "liability under Title VII for adopting a practice that has a disparate impact on the minority firefighters." *Ricci*, 129 S.Ct. at 2664. The charter of the defendant municipality in *Ricci*, the City of New Haven, Connecticut, established a merit system requiring the city to fill vacancies in its civil service positions with the most qualified

individuals as determined by a civil service examination.  *Id*. at 2665.  After each examination, a ranked list of applicants who passed the examination was certified by the city and, according to the charter's "rule of three," the relevant hiring authority was required to fill each vacancy by choosing a candidate from among the list's top three ranked candidates.  *Id*.  Each certified list of candidates eligible for promotion based on having passed the relevant civil service examination was to remain valid for two years. *Id*.

The results of a promotional civil service examination given early in 2003, showed the white candidates had outperformed the minority candidates, such that had a ranked list candidates from the test results been certified, as contemplated by the city's charter, the vacant firefighter positions that would have been filled from such list would have been awarded to white candidates.  *Ricci*, 129 S.Ct.  at 2664-65.  Rather than certifying the list, the city discarded the test results, and sought bids from consultants to develop and administer a revised civil service examination that would not unintentionally favor white candidates.  *Id*. at 2665.  The revised examination was given in November and December 2003, and the resulting ranked list of candidates would have required, under the rule of three, that the seven firefighter captain positions then vacant be filled from the top nine candidates, seven of whom were white, and two of whom were Hispanic.  *Id*.  at 2666.  Several firefighters who had passed the earlier examination, and thus would have been eligible for promotion had the city certified a ranked list of candidates based on the earlier examination's results, sued under Title VII asserting disparate treatment in employment based on the city's failure to certify such list.  *Id*. at 2671.

The Supreme Court, observing that Title VII prohibits, *inter alia*, race-based employment discrimination that is intentional ("disparate treatment"), as well as practices that are not intended to discriminate but result in a disproportionately adverse effect on minorities ("disparate impact"), focused on the fact that the city, by discarding the first examination's results without ever certifying them,

> would violate the disparate-treatment prohibition of Title VII absent some valid defense. All the evidence demonstrates the City chose not to certify the examination results because of the statistical disparity based on race - *i.e.*, how minority candidates had performed when compared to white candidates. . . . Without some other justification, this express, race-based decisionmaking violates Title VII's command that employers cannot take adverse employment actions because of an individual's race.

*Ricci*, 129 S.Ct. at 2672-73 (citing 42 U.S.C. § 2000e-2(a)(1)).

The Court continued that "[a]llowing employers to violate the disparate-treatment prohibition based on a mere good-faith fear of disparate-impact liability would encourage race-based action at the slightest hint of disparate impact." *Ricci*, 129 S.Ct. at 2675. Further, imposing a "minimal standard" could result in employers discarding the results of a lawful and beneficial promotional civil service examination, even with little or no evidence of disparate-impact discrimination, and "amount to a *de facto* quota system, in which a 'focus on statistics . . . could put undue pressure on employers to adopt inappropriate prophylactic measures . . . with the intent of obtaining the employer's preferred racial balance.'" *Id*. (quoting 42 U.S.C. § 2000e-2(j)). In contrast, "[t]he purpose of Title VII 'is to promote hiring on the basis of job qualifications, rather than on the basis of race or color.'" *Id*. (quoting *Griggs v. Duke Power Company*, 401 U.S. 424, 434 (1971)). As such, the defendant city's discarding the first examination's test results, without ever certifying them as required by the city's charter, constituted

disparate-treatment, injurious to the plaintiff's Title VII rights, which was in violation of Title VII absent a "strong basis in evidence" that the purported remedial action was necessary to avoid disparate-impact liability upon certifying the results. *Id*. at 2677.

Significantly, according to the Court,

a *prima facie* case of disparate impact liability - essentially, a threshold showing of a significant statistical disparity, and nothing more - is far from a strong basis in evidence that the City would have been liable under Title VII had it certified the results.  That is because the City could be liable for disparate-impact discrimination only if the examinations were not job related and consistent with business necessity, or if there existed an equally valid, less-discriminatory alternative that served the City's needs but that the City refused to adopt.

*Ricci*, 129 S.Ct. at 2678 (citing 42 U.S.C. § 2000e-2(k)(1)(A), (C)).

In *Ricci*, the defendants were unable to establish a *prima facie* case of disparate impact liability based on the 2003 civil service examination, because the defendants lacked a strong basis in evidence that the first examination was not validly job-related and consistent with business necessity, or because the second examination was an equally valid but less-discriminatory alternative to the first examination.  *Id*. at 2681.  Rather, after the first examination was complete, "the raw racial results became the predominate rationale for the City's refusal to certify the results."  *Id*.  The Court, in concluding that the plaintiff's were entitled to summary judgment on their Title VII claim, remarked that if, after certifying the results of the first examination, the City were to face a disparate-impact suit, the City would avoid such liability "based on the strong basis in evidence that, had it not certified the results, it would have been subject to disparate-treatment liability."  *Id*.

In the instant case, the facts materially differ from those presented in *Ricci*, particularly insofar as, in contrast to the defendant city's refusal to certify the results of

the first civil service examination in *Ricci*, here the 2006 test results were certified, with the resulting 2006 Eligible List in effect for at least one year, and terminating upon the establishment of the 2008 Eligible List, in compliance with applicable New York law. N.Y. Civ. Serv.  Law § 56[1] ("The duration of an eligible list shall be fixed at not less than one nor more than four years . . . .  An eligible list that has been in existence for one year or more shall terminate upon the establishment of an appropriate new list . . . ."). Accordingly, in the instant case, unlike the plaintiffs in *Ricci*, Plaintiff's participation in the 2006 civil service examination, including any time and financial resources Plaintiff expended preparing for such examination, was not in vain because Plaintiff, upon scoring first on the examination, was ranked first on the resulting 2006 Eligible List which was certified and from which any appointments to vacant positions, filled while the 2006 Eligible List was in effect, would have been made.

Nor is there any merit to Plaintiff's argument that the City's replacement of the 2006 Eligible List in favor of the 2008 Eligible List, which was created from the results of the revised civil service examination, was in violation of the Supreme Court's direction that a municipality may not discard civil service test results based on fears of litigation based on race discrimination absent a strong basis in evidence that the previous version of the civil service examinations did not validly measure job performance such that the employer could be subject to disparate-impact liability.  Plaintiff's Memorandum at 6-7 (citing *Ricci*, 129 S.Ct. at 2676-77).  As discussed, unlike the facts of *Ricci* in which the results of a civil service examination were discarded without ever having been certified, here, as noted, the 2006 examination results were certified, and the 2006 Eligible List created from such results remained in effect for more than one year until it

was replaced by the 2008 Eligible List created from the revised civil service examination

results.  Although Defendants were motivated, in part, to revise the civil service

examination based on past exposure to litigation for disparate impact claims based on

examinations vulnerable to such attacks, "Title VII does not prohibit an employer from

considering, before administering a test or practice, how to design that test or practice

in order to provide a fair opportunity for all individuals, regardless of their race."  *Ricci*,

129 S.Ct. at 2677.  A plain reading of the record establishes that the RFP reflects the

City's desire to revise the civil service examinations "to provide a fair opportunity for all

individuals, regardless of their race."

> As relevant, the RFP states
>
> The testing instruments and procedures must conform to Title VII of Chapter 42 of the United States Code and the EEOC Uniform Guidelines on Employee Selection Procedures; to this end, they must be free from non-job related factors which might function as biases against any group on the basis of race, color, religion, sex, age, national origin, or any other classification protected by all.
>
> * * * *
>
> The City desires that the selection process be as valid and reliable as possible for the promotion of Police Officers.  Selection should be based on merit, emphasizing the KSAPS [knowledge areas, skills, abilities, and personal characteristics] needed for higher-level policing functions.  It is the City's goal to have developed, in each title listed, an examination which will be appropriate for selecting qualified candidates on a rank order basis.  Proposals should therefore be aimed at providing the best overall selection of candidates while complying with the professional standards and guidelines mentioned above.

RFP § 1, Introduction, at 8-9 (bracketed text added).

As such, the facts of the instant case are sufficiently and materially distinct from those

of *Ricci* and do not support granting summary judgment in favor of Plaintiff on his Title

VII claim.  Accordingly, the court analyzes Plaintiff's Title VII claim under *McDonnell*

*Douglas*.

Recognizing that most employment "discrimination and retaliation is not carried out so openly as to provide direct proof of it," the "*McDonnell Douglas* burden-shifting analysis" was developed to permit a party aggrieved under Title VII to asserted a *prima facie* case of employment discrimination using only circumstantial evidence.  *Sanders v. New York City Human Resources Administration*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.  2003).  Specifically, the plaintiff must first establish a *prima facie* case of employment discrimination, after which the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the alleged disparate treatment, thus shifting the burden back to plaintiff to establish that defendant's proffered legitimate non-discriminatory reason is mere pretext.  *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802-04)).  Where, however, a plaintiff relies on direct evidence of employment discrimination, there is no need to show the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 11, 122 (1985) (holding *McDonnell Douglas* burden-shifting test "is inapplicable where the plaintiff presents direct evidence of discrimination.").  Here, Defendant argues that Plaintiff is unable to establish a *prima facie* case of race-based employment discrimination under *McDonnell Douglas*, because Plaintiff, by failing to sit for the revised civil service examination in 2008, was not then qualified for the vacant inspector position.  City's Memorandum at 3-5.  The City also asserts that even had the civil service examination not been revised, and the 2006 Eligible List remained in effect, the City would not have been required to appoint Plaintiff to the vacant inspector

position, but, undisputed by Plaintiff, was permitted to select from the top three candidates on the list, on which Plaintiff placed first, Reichmuth placed second, and an unnamed white male placed third. *Id.* at 4. As such, the City maintains Plaintiff is unable to establish the circumstances under which he was not promoted to inspector give rise to an inference of discrimination. Plaintiff argues in opposition that because he is relying on direct, rather than circumstantial evidence, the *McDonnell Douglas* burden-shifting analysis does not apply. Plaintiff's Reply at 3-5.

Plaintiff asserts in support of summary judgment on his Title VII claim that unchallenged direct evidence, included those facts deemed admitted based on the City's failure to timely answer Plaintiff's Request to Admit, establish that, as a matter of law, the City discriminated against Plaintiff on the basis of race by failing to appoint Plaintiff to the vacant inspector position, instead, making the appointment from the 2008 Eligible List that was created from the results of a civil service examination that was revised to increase the number of minority promotions within the Police Department. Plaintiff's Memorandum at 6-7. Plaintiff specifically points to several undisputed facts including (1) Plaintiff was ranked first on the 2006 Eligible Test; (2) the inspector position to which Plaintiff maintains he should have been appointed became vacant after Ramunno's retirement which was announced on March 18, 2008; (3) the 2008 Eligible List was not adopted until April 16, 2008; (4) Defendants chose to promote off the 2008 Eligible List rather than the 2006 Eligible List; and (5) the RFP also indicated the City's desire to revise its civil service examination was motivated, in part, by the City's desire to avoid race-based employment discrimination litigation. Plaintiff's Memorandum at 4-5. However, several other facts on which Plaintiff relies

are disputed, including that (1) Plaintiff "was the best qualified candidate for the position from March 18th, to April 16th"; (2) "an inspector vacancy became available on March 18, 2008" with the announcement of Ramunno's retirement in Special Order 2008-48; and (3) RFP by which the city sought bidders to develop a revised police promotional examinations included a statement advising all bidders' tendered proposals were to be accompanied by a statement indicating the bidder would work toward a workforce goal of 25% minority workers and 5% female workers, thereby evidencing the City's desire that the revised civil service examination result in increased promotions of minority employees.  Plaintiff's Memorandum at 4.

In opposition, the City specifically maintains the fact that Plaintiff was ranked first on the 2006 Eligible List did not obligate the City to appoint Plaintiff to a vacancy but, rather, placed Plaintiff in the group of three from which the City was permitted to promote.  City's Memorandum at 4 (citing N.Y. Civ. Serv. Law § 61[1] ("Appointment or promotion from an eligible list to a position in the competitive class shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are will to accept such appointment or promotion . . . .")).  The City also maintains that "Special Order 2008-48 does not 'declare' a vacancy for the position of inspector but simply reports a retirement."  City's Counterstatement of Facts ¶ 10.  Moreover, the City asserts that the language on which Plaintiff relies in support of his argument that the City's civil service examination was revised in 2008 to increase the number of minorities promoted to higher ranking civil service positions within the Police Department has been misconstrued.  Licata Declaration ¶¶ 2-3.

In particular, the City emphasizes that the language regarding a goal of a 25 % minority workforce and 5 % female workforce refers not to the composition of the Police Department's workforce hoped to be achieved through use of the revised civil service examination but, rather, to the composition of the workforce of the bidder responding to the RFP, and that the City was required, pursuant to its charter, to include such language in all RFPs issued.  Licata Declaration ¶¶ 2-3.  Plaintiff's asserted direct evidence of race-based employment discrimination thus turns on the correct construction of this language.

A careful review of the record establishes that the RFP's direction that "[a]ll bidders must submit with their bid a statement indicating that they will work toward a minority workforce goal of 25 %, and woman workforce goal of 5 %" is included to comply with § 96-13[F] of the City's Code, which provides

> The advertisement inviting bids for the doing of a work or improvement or for the furnishing of materials, supplies, or equipment shall among other things state that the bidder must submit prior to the awarding of a contract a statement indicating that the bidder will work toward a minority workforce goal of 25%, and women workforce goal of 5%. . . . .  These goals shall be utilized for all purchasing, professional services and construction contracts.

Code, City of Buffalo, NY, § 96-13[F] (Licata Declaration Exh. A).

Such language is properly interpreted as referring to the composition of the bidder's workforce, rather than the desired composition of the workforce for the City department soliciting the bid, in this case, its Police Department.  Plaintiff's reliance on this language is, thus, misplaced.  As such, no direct evidence establishes Plaintiff's Title

VII claim.[6]

Absent evidence, either direct or circumstantial, supporting his Title VII claim, and the facts of the instant case being materially inapposite to *Ricci*, the *McDonnell Douglas* burden-shifting analysis applies, requiring Plaintiff demonstrate a *prima facie* case of employment discrimination.  Under *McDonnell Douglas*, to establish a *prima facie* claim for race-based employment discrimination under Title VII, "a claimant must show that: 1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry*, 336 F.3d at 138 (citing *Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir.  2002)).  Plaintiff, however, cannot satisfy the second and fourth criteria of such test.

It is undisputed that Plaintiff never sat for the 2008 civil service examination (and was not prevented from doing so by Defendants) and, thus, his name was never placed on the 2008 Eligible List from which the successful candidate was required to be chosen from among the top three eligible candidates.  As such, Plaintiff, as a matter of law, did not qualify to be appointed to the vacant inspector position.  *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6 (1981) (noting the female plaintiff had applied to be promoted to an available position, but was rejected in

---

[6] The City Charter's requirement that all bidders submit with their bids statements indicating they aspire to achieve a specific race and gender-based quota in their respective work-forces could, arguably, constitute an intention to create racial or gender quotas in violation of Title VII.  The Charter, however, does not impose such quotas for its own workforce and does not require that such putative quotas be satisfied by the successful bidder and, as such, these facts negate finding that § 96-13[F] is circumstantial evidence that the City seeks to impose a similar quota for its own workforce.  Plaintiff does not argue otherwise.

favor of a male employee who had been under the plaintiff's supervision); *McDonnell Douglas*, 411 U.S. at 802 (describing second criteria for prima facie case as showing "that he applied and was qualified for a job for which the employer was seeking applicants. . . ."). *See also Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (interpreting "*McDonnell Douglas* and *Burdine* generally to require a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion."). Plaintiff thus cannot establish the second criteria for a *prima facie* case of race-based employment discrimination under Title VII.

Nor can Plaintiff, under the facts of the instant case, establish that the appointment of Reichmuth from the 2008 Eligible List to the vacant inspector position creates any inference of race-based discrimination by the City, given that all candidates on both the 2006 Eligible List and the 2008 Eligible List were Caucasian males, a fact Plaintiff does not dispute. *See Johnson v. Connecticut Department of Corrections*, 392 F.Supp.2d 328, 338 (D.Conn. 2005) (holding plaintiff, a black male, "cannot make out a prima facie case of race discrimination on the basis of [the] promotion [of another black male] over [plaintiff] as the circumstances do not give rise to an inference of discrimination." (bracketed text added) (citing *Brennan v. City of White Plains*, 67 F.Supp.2d 362, 373 (finding claim of gender discrimination by female plaintiff insufficient where open positions were ultimately filled by women); and *Samuels v. New York State Department of Correctional Services*, 1997 WL 253209, at *5 (S.D.N.Y. May 14, 1997) (finding no inference of race discrimination in favor of black plaintiff where two of four open positions went to black males)). Accordingly, Plaintiff also fails

to meet the fourth criteria for a *prima facie* case of employment discrimination. Moreover, absent establishing a *prima facie* case of employment discrimination, the burden does not shift to the City to establish a legitimate, nondiscriminatory motive for promoting Reichmuth off the 2008 Eligible List rather than Plaintiff from the displaced 2006 Eligible List.

Summary judgment on Plaintiff's Title VII claim should be DENIED as to Plaintiff, and GRANTED as to Defendants.

### B.    Second Claim - § 1983

The court observes that Plaintiff's Second Claim alleging racial discrimination in violation of § 1983, insofar as the Defendant discarded the 2006 Eligible List, replacing it with the 2008 Eligible List generated from the revised civil service examination designed to increase the number of minorities in the Police Department, deprived Plaintiff of rights under the Constitution and Title VII, fails to state a claim and, despite Defendants' failure to so move, should be *sua sponte* dismissed.  A district court has the inherent authority to *sua sponte* dismiss an action as frivolous, regardless of whether the plaintiff has been granted leave to proceed *in forma pauperis*.  *Fitzgerald v. First E. Seventh St.Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (dismissing, *sua sponte*, complaint filed by *pro se* plaintiff who had paid filing fee where, given the frivolous nature of complaint, dismissal would have been mandatory under 28 U.S.C. § 1915(e)(2) had plaintiff sought to proceed *in forma pauperis*).

In particular, Plaintiff maintains Defendants violated his civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person

who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140). Here, Plaintiff's Second Claim is best construed as alleging a deprivation Fourteenth Amendment procedural due process. *See McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001) (claim filed by municipal firefighter who was passed over for promotion allegedly in retaliation for participating in investigation of sexual harassment complaint made by local firefighters' union secretary against union president asserted 14th Amendment due process violation). To prevail on such claim, however, Plaintiff must demonstrate he "'possessed a protected liberty or property interest and that he was deprived of that interest without due process.'" *McMenemy*, 241 F.3d at 285-86 (quoting *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.) (*per curiam*), *cert. denied*, 525 U.S. 907 (1998)). The property interests protected by the Due Process Clause, however, are not created thereunder. *Id.* at 286. Rather, "'[s]uch property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Luck v. Mazzone*, 52 F.3d 475, 477 (2d Cir. 1995) (internal quotation marks and citation omitted)). A property interest in a benefit is not created by an abstract need or desire for or a unilateral expectation of the benefit, but by "a legitimate claim of entitlement to

it." *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  Here, because Plaintiff's claimed due process deprivation is based on the denial of a promotion to a police inspector position in accordance with New York statutes governing such promotions, any property interest of which Plaintiff was deprived arose under New York law.  *Id.*

It is settled New York law that "a civil servant seeking a promotion 'does not possess any mandated right to appointment or any other legally protectable interest.'" *McMenemy*, 241 F.3d at 286 (quoting *Cassidy v. Municipal Civil Service Commission of City of New Rochelle*, 337 N.E.2d 752, 754 (N.Y. 1975), and citing *Andriola v. Ortiz*, 624 N.E.2d 667, 669 (N.Y. 1993)).  Even had Plaintiff been promised the promotion to an inspector position, such promise would not have created a property interest in the position.  *Id.*  (holding "any alleged promise of promotion made by [the fire chief] before there was an opening available to accommodate such a promotion did not strip [the fire chief] of his discretion to choose another candidate once a position did become available).  Rather, "New York State courts 'repeatedly have acknowledged the importance of the discretionary governmental appointive power embodies in Civil Service Law § 61, and have rejected attempts to invoke the aid of the courts to limit the reasonable exercise of that discretion."  *Id.* (citing *Andriola*, 624 N.E.2d at 669).

Insofar as Plaintiff's Second Claim can be construed as alleging deprivation of a property interest in a competitive civil service examination for the inspector position, no such property right was conferred on Plaintiff under New York law given that Plaintiff had no protected liberty interest in the vacant inspector position to which he aspired. *McMenemy*, 241 F.3d at 287 ("because [the plaintiff] has no legitimate claim of

entitlement to - and therefore no property interest in - the position to which he aspired, the procedures used to fill that job are immaterial to his due process claim.  The fact that New York has mandated certain procedures does 'not of itself create a property or liberty right.'" (quoting *Schwartz v. Mayor's Committee on the Judiciary*, 816 F.2d 54, 57 (2d Cir. 1987))).  Furthermore, "[i]t follows *a fortiori* that [Plaintiff] also had no property interest in fair consideration for promotion."  *Id*. at 288 (citing *Deas v. Levitt*, 539 N.E.2d 1086, 1090 (1989)).  Simply put, "the fact that state law creates a right to non-discriminatory consideration for a discretionary promotion does not create a property interest, any more than does the requirement of a competitive civil service exam."  *Id*.

Plaintiff thus had no cognizable property right to the inspector position and his § 1983 claim fails.  Moreover, even if Plaintiff did possess such a cognizable interest, no deprivation of the right occurred without due process of law because Plaintiff was provided with an adequate post-deprivation remedy, *i.e.*, an Article 78 proceeding.[7] *McMenemy*, 241 F.3d at 289.  Accordingly, summary judgment on Plaintiff's Second Claim should be GRANTED in favor of Defendants *sua sponte*.

### C.    Third Claim - Equal Protection

Assuming the District Judge agrees with the undersigned's recommendation regarding summary judgment on Plaintiff's Title VII and § 1983 claims, the resolution of Plaintiff's employment discrimination claim under such federal statutes renders Plaintiff's Fourteenth Amendment equal protection claim moot.  *See Ricci*, 129 S.Ct. at

---

[7] N.Y. C.P.L.R. § 7801 *et seq.*  (McKinney's 2008).

2672 (declining to reach equal protection claim because issue was resolved under Title VII, and citing *Atkins v. Parker*, 472 U.S. 115, 123 (1985); and *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (*per curiam*) ("[N]ormally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case."). Accordingly, summary judgment on Plaintiff's Third Claim alleging a denial of equal protection in violation of the Fourteenth Amendment should be GRANTED in favor of Defendants.

### D.     Fourth Claim - Defamation

Plaintiff alleges that his name was submitted at an April 3, 2008 meeting attended by Buffalo Mayor Byron Brown, Gipson, and other senior ranking Police Department officials for consideration for the recently vacant inspector position, but Gipson, believing Plaintiff to be racist, voiced opposition to Plaintiff's nomination. Complaint ¶¶ 22-25. According to Plaintiff, Gipson's statements opposing Plaintiff's nomination, unsupported by any evidence, were defamatory and caused Plaintiff to suffer professional harm as a result of not being selected for promotion to the inspector position. *Id*. ¶¶ 41-47.

Plaintiff's' defamation claim is brought pursuant to New York law. Significantly, "[u]nder 28 U.S.C. § 1367(a), a district court has 'supplemental jurisdiction' over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy' once original jurisdiction is established." *Cicio v. Does*, 321 F.3d 83, 97 (2d Cir. 2003) (quoting 28 U.S.C. § 1367(a)), *vacated on other grounds by* 542 U.S. 933 (2004). "A state law claim forms

part of the same controversy if it, and the federal claim 'derive from a common nucleus

of operative fact.'"   *Id*. (quoting *City of Chicago v. International College of Surgeons*,

522 U.S. 156, 165 (1997)).   The court, however, may decline to exercise supplemental

jurisdiction over a state law claim where (1) the court has dismissed all claims over

which it has original jurisdiction, or (2) in exceptional circumstances, there are other

compelling reasons for declining jurisdiction.   28 U.S.C. § 1367(c)(2), (3).

      In exercising its discretion whether to retain supplemental jurisdiction over

pendent state claims, the district court must balance several factors, including

considerations of judicial economy, convenience, and fairness to the parties.

*Correspondent Services Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 126-27

(2d Cir. 2003).   "In general, where the federal claims are dismissed before trial, the

state law claims should be dismissed as well." *Marcus v. AT &T Corp.,* 138 F.3d 46, 57

(2d Cir. 1998); *see also Giordano v. City of N.Y.,* 274 F.3d 740, 754 (2d Cir. 2001)

(once federal claims are dismissed, whether plaintiff is disabled under New York state

law "is a question best left to the courts of the State of New York").   "[T]the discretion

implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh

and balance several factors, including considerations of judicial economy, convenience

and fairness to litigants." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (citing

*Castellano v. Board of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)).   Where "dismissal

of the federal claim occurs 'late in the action, after there has been substantial

expenditure in time, effort, and money in preparing the dependent claims, knocking

them down with a belated rejection of supplemental jurisdiction may not be fair.   Nor is

it by any means necessary.'"   *Purgess*,   33 F.3d at 138 (quoting 28 U.S.C. § 1367,

Practice Commentary (1993) at 835).

A district court abuses its discretion by exercising supplemental jurisdiction over state law claims, despite the dismissal of all federal claims, "where the federal claims had been dismissed at a relatively <u>early</u> stage and the remaining claims involved issues of state law that were unsettled." *Valencia ex. rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (underlining added) (citing *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001)); *see also Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 64 (2d Cir. 2001); *Seabrook v. Jacobson*, 153 F.3d 70, 71-73 (2d Cir. 1998)). In contrast, a district court's decision to retain state claims after dismissing all federal claims where the question arises late in the proceedings will be affirmed. *See Purgess*, 33 F.3d at 139 (holding district court did not abuse its discretion by exercising supplemental jurisdiction over state claims where four of five federal claims were dismissed on the eve of trial, final federal claim was dismissed after the close of all the evidence, the parties had spent years preparing for trial in federal court, jury had heard evidence for several days and was ready to begin deliberations, and it would have been wasteful to subject case to another full trial before a different tribunal). Prior to declining to exercise supplemental jurisdiction over state law claims, however, the district court should consider whether the litigants will be prejudiced by the decision. *Correspondent Services Corp.*, 338 F.3d at 127.

The instant case is at a relatively early stage, having been filed on March 5, 2010, with discovery not yet complete. Although a claim sounding in defamation is subject to a one-year limitations period in New York, N.Y. C.P.L.R. § 215[3], that limitations period is, by operation of 28 U.S.C. § 1367(d), tolled while the claim is

pending in this court "and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."   Moreover, the Western District of New York's very heavy caseload is one more reason to decline exercising supplemental jurisdiction over common state claims that will likely reach trial earlier in the state court.  Under these circumstances, the court should decline to exercise its supplemental jurisdiction over the remaining state law claim.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 22), should be DENIED; Defendant Gipson's cross-motion (Doc. No. 32), should be GRANTED; summary judgment should be GRANTED in favor of the City; the Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 13, 2011
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        September 13, 2011
             Buffalo, New York